FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2013 JUL 17 P 2: 06

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ERIK D. PRINCE,             )
                            )
    Plaintiff,              )
                            )
    v.                      )  Civil Action No. 1:13 cv 864
                            )  LMB/TCB
ROBERT YOUNG PELTON,        )
                            )
    Defendant.              )
                            )

## COMPLAINT

**ERIK D. PRINCE** ("Prince"), by and through counsel, brings this Complaint against **ROBERT YOUNG PELTON** ("Pelton") and alleges as follows:

### NATURE OF THE ACTION

1. This action is brought against Pelton for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and tortious interference with a business expectancy.

### PARTIES

2. Erik D. Prince, a resident of the Commonwealth of Virginia, is an individual and former business associate of Robert Young Pelton. Prince is the author of an untitled memoir ("Autobiography"). Through his company, PG Investments of Virginia, LLC ("PG Investments"), Prince is also the owner of the Blackwater trademark and product line.

3. Robert Young Pelton, a resident of San Diego County, California, is an individual and former business associate of Prince.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331 and 1338. The Court has jurisdiction over the related state law claims under 28 U.S.C. § 1367.

5. The Court has personal jurisdiction over Pelton because of Pelton's continuous and systematic business contacts in Virginia and because a substantial part of the events or omissions giving rise to this lawsuit, as well as substantial injury to Prince, have occurred or will occur in this District as a result of Pelton's acts of copyright infringement and impending acts of copyright infringement, as alleged below. From 2010 to 2012, Pelton continually and repeatedly carried out business with Prince in Virginia, including but not limited to numerous meetings with Prince in Middleburg, Virginia, where he discussed his contractual obligations to market Blackwater products. Pelton directed the warehousing of Blackwater products in Virginia Beach, Virginia, from 2011 to 2012. Additionally, Pelton threatened to distribute Prince's Autobiography without authorization from Prince and also threatened to sue Prince in Virginia if Prince did not pay Pelton's extortionate and unjustified demands.[1]

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400 because a substantial part of the events or omissions giving rise to the claims occurred in this District and because the Defendant is subject to personal jurisdiction.

## OVERVIEW

7. Pelton, a former business associate of Prince, obtained by deceit a manuscript of Prince's unpublished memoir, Autobiography. Subsequent to Pelton being accused of breaching a contract with Prince, Pelton threatened to publish Prince's Autobiography on the Internet or

---

[1] "Pelton said in a phone interview and emails that he's going to sue Prince in Virginia for $40,000...." Prince Decl., App. 4, p. 1.

sell it to a third party unless Prince paid him various sums of money. Pelton also attempted, through an agent, to sell Autobiography to a publisher. Such unauthorized publication has and would cause irreparable harm to Prince and would also nullify the publisher's extant agreement to purchase Prince's Autobiography from Prince. Autobiography in its unredacted form also contains facts that the Central Intelligence Agency ("CIA") asserts are classified,[2]

## FACTS

### Autobiography

8. Prince founded Blackwater in 1997 and sold Xe Services, LLC, the owner of Blackwater, in December 2010. He retained ownership of the name Blackwater and related trademarks and merchandise.

9. Prince owns the copyright to Autobiography and has filed an application to register the unpublished, redacted version of the manuscript with the United States Copyright Office. Attached as Exhibit A is a copy of Prince's application to register the unpublished redacted manuscript, along with confirmation of the Copyright Office's receipt of the application, the application fee, and the deposit copy.

10. In connection with Autobiography, Prince and PG Investments, contracted in November 2011 with Davin Coburn ("Coburn") to provide research and editing and, in other respects, to "assist in creating" the manuscript.

11. Prior to November 2011, Pelton had requested a Popular Mechanics editor to recommend a thorough fact-checker and writer/editor. The editor recommended Coburn. Pelton provided the reference to Prince, who contracted with Coburn.

---

[2] Prince and the CIA are in discussions regarding the scope of redaction of classified information in Autobiography.

12. Pelton did not write or otherwise create any portion of Autobiography. The creation and writing of Autobiography, and the selection of information/scenarios to include, were done exclusively by Prince and by Coburn acting under contract with Prince.

13. Coburn fulfilled the services of his contract to fact check and edit, and in early January 2013 Autobiography, although not finalized, was basically complete subject to additional minor editing and fact checking.

14. Prior to publication or even marketing to a publisher, Autobiography had to be submitted to the CIA Prepublication Review Board ("PRB"), which reviews manuscripts for classified information.

15. Pelton repeatedly told Prince he should self-publish, claiming—incorrectly—such option would enable Prince to evade the requirement to submit the manuscript to the PRB for review. Prince rejected that option.

16. Pelton then suggested a "work-around," in which Pelton would put his name on Autobiography so the CIA could not accuse Prince, who had signed a non-disclosure agreement with the CIA, of violating that agreement. Prince also rejected that option.

17. Near the end of January 2013, Prince submitted Autobiography to the PRB for review. Prince and the CIA continue to discuss appropriate redactions.

### Robert Young Pelton

18. In March 2011, Prince entered into an agreement with Pelton and DPx Gear Inc., a company owned by Pelton, to develop and market Prince's Blackwater Brand ("Blackwater Contract"). By early 2013, Prince had obtained information, including a financial audit showing Pelton was in breach of the Blackwater Contract due to mismanagement of funds and other reasons.

19. At the end of February 2013, Prince's financial advisor met with Pelton and expressed concern about Pelton's performance under the Blackwater Contract.

20. In mid-March 2013, Prince and his financial advisor met with Pelton in Vienna, Austria, where they confronted him with a financial audit showing he was in breach of the Blackwater Contract.

21. On April 29, 2013, Prince's counsel, Donald M. Lansky (Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C.; 39395 W. 12 Mile Rd., Suite 200; PO Box 9057; Farmington Hills, MI 48333-9057) notified Pelton in writing that he was in breach of the Blackwater Contract.

22. Throughout this time period (February through April 2013), Pelton made threats to defame Prince and also made various unsubstantiated claims for financial reimbursement from Prince regarding the Blackwater Contract, including but not limited to a request for fees claiming he had marketed Autobiography and had a written offer for its purchase. Pelton also claimed reimbursement for expenses unrelated to Autobiography, which the audit showed he had not made.

23. The Blackwater Contract with Pelton made specific exceptions to his services regarding Blackwater marketing. One of those exceptions was "an Autobiography to be published by Simon and Schuster." The basis for specifying Simon and Schuster was that it was the publisher that, at the time, had expressed significant interest in a memoir by Prince and the history of Blackwater. Autobiography referenced in this Complaint is the same manuscript that was expressly excepted from the Blackwater Contract.

24. Sometime in early 2013 Prince learned from Coburn that Pelton had contacted him and requested a copy of Autobiography, claiming wrongly that Prince was intending to self-

publish and that Pelton needed to see the spacing for technical reasons such as photographic placement. Coburn unwittingly provided a copy of Autobiography to Pelton.

25. Prince never authorized Pelton to contact Coburn to obtain Autobiography. Prince was unaware of this request and that Pelton had obtained a copy of Autobiography until Coburn told him.

26. Prince never authorized Pelton or any agent on behalf of Pelton to distribute or to market or represent Prince in any way regarding Autobiography. Pelton never presented Prince a written offer from any publisher, and varied the price of the agreement he claimed he had reached with a publisher. Consequently, Prince believed Pelton was making another unsupported claim for money.

27. The only person authorized to represent Prince for Autobiography is David Kuhn ("Kuhn") who contracted with Prince on May 21, 2013 to be Prince's agent.

28. The week of June 24, 2013, Kuhn and Prince met with various publishers in New York City. The manuscript that Kuhn and Prince presented to all the interested publishers was the redacted copy of Autobiography sent to Prince by the CIA after its review.

29. On June 26, 2013, Portfolio Penguin, an imprint of Penguin Random House, and Prince reached a tentative agreement to publish Autobiography.

30. On July 8, 2013, Portfolio Penguin issued a press release announcing the agreement to publish Autobiography in November 2013.

31. The contract is in its final drafting stage and the parties are in agreement on the substantive points. Under the contract, Prince has the expectation to be paid $2,000,000 for Autobiography.

### Pelton's Agent Marketed Autobiography in Early 2013 to Portfolio Penguin

32. In late February or early March 2013, Paul Bresnick, a business acquaintance of Adrian Zackheim, President and Publisher of Portfolio Penguin, stated that Pelton had provided him a manuscript of Prince's Autobiography and asked if Zackheim was interested in purchasing it. Bresnick has served as an agent for Pelton.

33. Zackheim requested to speak directly to Prince about the proposed purchase. Bresnick stated he would not be able to arrange that conversation. Bresnick later told Zackheim that Prince had not authorized Pelton "to act as Mr. Prince's intermediary in connection with the manuscript."

34. Portfolio Penguin has confirmed that "public disclosure of the manuscript, as threatened by Mr. Pelton would substantially compromise, if not completely destroy, the value of Mr. Prince's manuscript."

### Pelton Threatens to Publish or Sell Manuscript Unless Paid

35. On July 10, 2013, referring to the public notice of the sale of Autobiography, Pelton emailed Prince claiming that Prince owed him money and threatening that, if Prince did not pay, Pelton would make public the unpublished, unredacted manuscript that Pelton tricked Coburn into providing him: "You just sold a book you haven't paid me for...." "We will me [sic] making a claim with the Adrian [sic] and your agent as well as the courts with the full manuscript filed as evidence."

36. On July 10, 2013, Pelton claimed on Facebook he "did," (meaning he wrote) Prince's Autobiography and offered to sell it.

37. In a July 11, 2013 published interview with a reporter, Pelton stated, "if he [Pelton] doesn't get satisfaction from Prince, he's going to publish the uncensored manuscript

himself." Pelton, who stated he would bring suit against Prince in Virginia, also threatened: "I will be suing Erik and the publisher [Penguin] and putting the entire pre-CIA vetted book online as proof of performance."

38. Because Prince and his counsel still are negotiating with the CIA regarding the redactions, Autobiography is not cleared to be made public. If Pelton carries out his threat to publish Autobiography or sell it to a third party, Prince's ability to sell it to Portfolio Penguin will be null and void.

39. Pelton's threats to publish the un-redacted Autobiography "online" are preventing Prince from signing the Portfolio Penguin contract.

## FIRST CAUSE OF ACTION

### Infringement of Copyright, 17 U.S.C. § 504

40. Prince repeats and re-alleges the allegations of Paragraphs 1 through 39 of this Complaint as if set forth in full.

41. Autobiography is an original creative work by Prince, which is copyrightable. Prince owns all copyrights in and to Autobiography including all exclusive rights in and to Autobiography under 17 U.S.C. § 106.

42. Pelton has infringed Prince's exclusive copyrights by, among other actions, making unauthorized copies of Autobiography and distributing copies of the unredacted Autobiography, which also contains information that the CIA asserts is classified, to the public.

43. Pelton has admitted that he attempted to market Autobiography for commercial purposes by sending copies of Autobiography to publishers.

44. Pelton has also offered to sell Autobiography and stated that he intends to disseminate Autobiography in the future; Pelton has specifically communicated in writing his

intent to publish and/or sell Autobiography, including portions that the CIA has asserted classified information.

45. Pelton's acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Prince under the Copyright Act. Pelton obtained a copy of Autobiography under false pretenses, and copied and distributed Autobiography without authorization from Prince.

46. By reason of Pelton's infringement and threatened future infringement, Prince has sustained and will continue to sustain substantial injury, loss, and damages in an amount presently unknown but to be determined at a later date.

## SECOND CAUSE OF ACTION

### Preliminary and Permanent Injunction, 17 U.S.C. § 502

47. Prince repeats and re-alleges the allegations of Paragraphs 1 through 46 of this Complaint as if set forth in full.

48. Pelton's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Prince great and irreparable injury that cannot fully be compensated or measured in money. Prince has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Prince is entitled to injunctive relief prohibiting Pelton from further infringing Prince's copyrights, and ordering Pelton to destroy all copies of Autobiography.

## THIRD CAUSE OF ACTION

### Tortious Interference with Business Expectancy

49. Prince repeats and re-alleges the allegations of Paragraphs 1 through 48 of this Complaint as if set forth in full.

50.     Prince has an expectancy of deriving at least $2,000,000 in value from the execution of the negotiated contract with Portfolio Penguin to publish Autobiography.

51.     Pelton was aware of the expectancy. *See, e.g.* Prince Decl. App. 3 ("Hmm Erik just sold the 'autobio' book I did for him for two million bucks to Penguin . . . .")

52.     Pelton's threats to publish the un-redacted form of Autobiography "online" or to sell it to a third party have prevented the final signing of Prince's contract with Portfolio Penguin.

53.     In interfering with Prince's relationship with Portfolio Penguin, Pelton has used and continues to use improper methods, including but not limited to misrepresentations to Coburn to obtain a copy of the manuscript, violation of the standards of the publishing industry ethics by marketing a manuscript to which he did not have rights, and threats to reveal classified national security information.

54.     Prince has suffered, and continues to suffer, damages in the form of fees to attorneys and publicists to respond to Pelton's unfounded allegations. Further, Prince has suffered, and continues to suffer, delay and loss of the $2,000,000 payment from Portfolio Penguin.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant Judgment as to the above causes of action, as follows:

1. Find Defendant to have infringed the copyright in Autobiography; and

2. Find Defendant to have willfully infringed the copyright in Autobiography; and

3. Immediately and permanently enjoin and restrain Defendant, his officers, agents, servants, employees, and those in active concert or participation with them or any of them from directly or indirectly infringing Plaintiff's rights under federal or state law in the Autobiography, including any unpublished or published version whether now in existence or later created, that is owned or controlled by Plaintiff; and

4. Require Defendant to deliver to Plaintiff for destruction any and all copies of Autobiography in any format; and

5. Award Plaintiff damages, including without limitation statutory damages under 17 U.S.C. § 504, in an amount presently unknown but to be determined at a later date; and

6. Award Plaintiff his costs in this action; and

7. Award Plaintiff his reasonable attorneys' fees incurred; and

8. Award Plaintiff prejudgment and post-judgment interest; and

9. Grant such other relief as the Court deems just and proper.

                                      Respectfully submitted,

                                      ERIK D. PRINCE

DATED: JULY 17, 2013             By:     /s/ Aaron S. Book

                                      Aaron S. Book (VSB# 43868)
                                      WEBSTER BOOK LLP
                                      300 N. Washington St., Suite 404
                                      Alexandria, Virginia 22314
                                      888-987-9991 Phone & Fax
                                      abook@websterbook.com
                                      Counsel for Plaintiff

                                      By:     /s/ Victoria Toensing
                                      Victoria Toensing, to be admitted *pro hac vice*
                                      Joseph E. diGenova, to be admitted *pro hac vice*
                                      diGENOVA & TOENSING, LLP
                                      1776 K Street, N.W., Suite 737
                                      Washington, D.C. 20006
                                      (202) 289-7701
                                      (202) 289-7706 (fax)
                                      Counsel for Plaintiff