UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ERIK D. PRINCE, | ) |
| Plaintiff, | ) Civil Action No. 1:13-cv-864-LMB-TCB |
| v. | ) |
| ROBERT YOUNG PELTON, | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE EFFECTIVE NOVEMBER 18, 2013, AND TO STAY ALL PROCEEDINGS UNTIL RULING ON MOTION**

Plaintiff Erik D. Prince, by counsel, hereby replies in support of his Motion (Dkt. No. 30) for Voluntary Dismissal Without Prejudice Effective November 18, 2013, and to Stay All Proceedings Until Ruling on Motion, and states as follows:

**OVERVIEW**

In a recitation twisting or ignoring material facts, Defendant Robert Young Pelton claims he never intended to publish Plaintiff Erik Prince's autobiography entitled *Civilian Warriors: The Inside Story of Blackwater and the Unsung Heroes of the War on Terror* (*Civilian Warriors*). And, moreover, he claims that discovery— limited to depositions of Pelton and Prince— has "revealed no factual basis for many of the [Complaint's] allegations . . . ." Def. Memo. in Opp'n (Dkt. No. 42) at 2.

In making these unsupported arguments, Pelton continues the extortion that began this case, which was "Pay me money or I will publish your book." It has evolved to "Pay me money or I will not agree to a Permanent Injunction."

1

Extant evidence supports Prince's initial claims that Pelton threatened to publish a manuscript that he received by trick, that his threats to publish resulted in Portfolio Penguin's refusal to sign a contract reflecting its oral agreement to buy the manuscript, that Pelton had no authority to market the manuscript, and that Pelton's minimal (a total of 13) edits to but four of 17 chapters in no way reaches the level of a contribution required for joint authorship.

Pelton has unreasonably and vexatiously prolonged this litigation to obtain money, first from Prince by threats and now by request to this Court.  Accordingly, Prince asks the Court to dismiss the case without prejudice.

**FACTS**

**1. Pelton threatened to publish or sell *Civilian Warriors*.**

Pelton repeatedly threatened to make Civilian Warriors public thereby substantially diminishing its value, either by attaching it to a court pleading or by offering it for sale.  The first threat was July 10, 2013.  In an email to Prince, Pelton complained "You just sold a book you haven't paid me for . . . ," claiming Prince owed him "for fixing, writing, shaping it and selling it."  Pelton threatened he would make it public by "making a claim with the [*sic*] Adrian . . . as well as the courts with the full manuscript filed as evidence." Prince Decl., Exh. 2.

The next threat was placing the manuscript up for sale on a Facebook page:  "Hmm Erik just sold the ‑autobio' book I did for him for two million bucks to Penguin and screwed the agent out of a commission and me for [expletive deleted] it and redoing it. * * * Anyone want to buy the uncensored version I did?" Prince Decl., Exh. 3.

In an interview with Jeff Stein and published July 12, 2013 in AND Magazine, Pelton is quoted: "Now Pelton said, if he doesn't get satisfaction from Prince, he's going to publish the uncensored manuscript himself." Prince Decl., Exh. 4.

At this point, Portfolio Penguin balked. Prince brought suit to protect the manuscript and his putative contract. Additionally, Pelton had a manuscript unvetted by the CIA, which stated at the time that it was Prince's responsibility to protect the classified material. Prince had no choice, requesting a TRO five days later.

Pelton's blithe statement in his pleading that he "never intended to publish the Autobiography," belies the uncontroverted, documented threats.

2. **Pelton had no authority to market *Civilian Warriors*.**

Pelton insinuated himself into the production of the *Civilian Warriors*. Prince's response was to ignore him.

Because Pelton had written several books, Prince requested him to find a writer who could fix the Waller Draft, which was an early un-publishable manuscript that needed a complete re-write. He did so. In the same time period (fall of 2011), Prince was considering self-publishing as an alternative to a commercial publisher. He also asked Pelton for information about self-publishing. That was the extent of Prince's requests of Pelton. Anything else Pelton did was because of his own desire to take over the Autobiography, even to the extent that he recommended Prince write the manuscript and put Pelton's name on it to avoid the CIA's Publication Review Board ("PRB") process. Prince turned him down. Prince Decl. ¶ 8; App. 4, p. 2.

Pelton has no contract with Prince for writing *Civilian Warriors* or for any other involvement in the product. Despite all the emails flouted by Pelton in his brief, not one word from Prince authorizes Pelton or his agent to market the book. As Prince testified ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████████████   Exh. A, Prince Dep'n

Tr. 146:2-5.

### 3. Pelton's Contribution to *Civilian Warriors* was minimal, not rising to the level required of a joint author.

Because Pelton found and recommended Davin Coburn, the researcher and writer hired by Prince to rewrite the Waller Draft, Coburn was understandably deferential to Pelton, providing him drafts of the manuscript as it went along and conferring with him about certain issues. Coburn 2d Decl., ¶¶ 11-14. Even when Pelton provided Coburn a false reason for wanting the most up to date manuscript, Coburn demurred, even though he wrote: "I haven't talked to Stacy or E[rik] P[rince] about sending it to any agents, obviously, so I'm kinda quietly following your lead here."[1] Def. Opp'n, Exh. 3.

Coburn candidly describes the full scale of assistance Pelton provided for the manuscript, which can best be characterized as cosmetic—a phrase added here, a paragraph moved there. Coburn avers they spent about 25 hours (three full working days) over ten months, and that Pelton provided a total of 13 changes in only four of 17 chapters. Coburn 2d Declaration, ¶ 14. One of those four chapters has been eliminated entirely from the book. *Id.*

Prince has always acknowledged that Pelton had the Waller Draft. Pelton's sole involvement with the Waller Draft was temporary possession. Of what moment, then, is the

---

[1] Pelton falsely argues that the second Coburn Declaration "concedes that Coburn did not send Pelton a copy of the Autobiography as a result of any trick, deceit, or false statement regarding needing to provide technical information to Prince." Def. Opp'n at 5. The Declaration does no such thing. In his first Declaration (filed with the Motion for the TRO), Coburn recalled the reason Pelton asked for the manuscript was related to self-publishing. However, after seeing the February 5, 2013 email, Coburn recalled Pelton said he wanted to send it to an agent. Neither reason has a factual basis. Pelton knew months before February 2013 that Prince was not going to self-publish. He also knew Prince had never authorized him or his agent to market the manuscript. In fact, the email confirms Coburn's initial recollection as Pelton also discusses self-publishing. The only issue is: which Pelton lie did Coburn recall.

4

fact that Pelton provided the Waller Draft to Coburn for that complete re-write? Def. Opp'n at 3. Nor does receiving drafts periodically from the actual writers (Prince and Coburn) make Pelton a joint author. Def. Opp'n at 3-4. Of equal non-importance is that Pelton provided any thoughts on the prologue content. Def. Opp'n at 4, 6. It has been completely revamped.

Notwithstanding the above-described *de minimus* contribution, Pelton makes the following unsubstantiated argument: "That Pelton did in fact write, rewrite, and restructure portions of the Autobiography as part of his work collaborating with Coburn on the Autobiography is now apparently no longer in dispute." Def. Opp'n at 5. The facts do not support that conclusion, and Prince has never conceded the issue.

4. **Pelton unreasonably and vexatiously extended this litigation by repeatedly refusing to sign a Permanent Injunction while simultaneously claiming he had no intent to publish the manuscript.**

From the beginning Pelton, who agreed to a Preliminary Injunction after the Court ordered a TRO, would only sign a Permanent Injunction if Prince paid him a considerable sum of money.[2] On Monday September 16, 2013, at a meeting with Pelton's counsel, Prince's counsel requested he sign a Permanent Injunction so we could all forget this litigation. This meeting was prior to any discovery and prior to Pelton's October 1 deposition of Prince. Counsel refused. On Friday September 20, 2013, Prince's counsel again offered to dismiss the case if Pelton would sign a Permanent Injunction. Again, counsel refused.

At Pelton's deposition on Wednesday October 2, 2013, after Pelton averred ███████

---

[2] Pelton claims that he "offered to agree to stipulate to dismissal of this case in exchange for nothing more than his Attorneys' fees." Def. Opp'n at 14. That is correct. Pelton's counsel stated in exchange for Attorneys' fees he would agree to a Permanent Injunction for this case only, stating that such settlement would not affect the Loudon County litigation. When asked, he estimated the amount of fees, prior to both depositions and to his discovery requests, was $100,000 – $150,000.

5

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pl. Memo. in Support of Mot. (Dkt. No. 31) at Exh. A (Pelton Dep'n Tr. at 13:5 – 14:4.), Prince's counsel asked for a recess to once again ask Pelton to sign a Permanent Injunction. He again refused.

On Tuesday October 22, 2013, prior to filing the Motion for Voluntary Dismissal Without Prejudice, Prince's counsel requested Pelton to agree to both the motion and to stay the proceedings pending a decision on the motion. Pelton refused both requests.

Having needlessly prolonged this litigation at considerably increased expense for Prince, Pelton now criticizes Prince for not filing discovery requests. Def. Opp'n at 12. Consistent with Prince's Motion for Dismissal, Prince did not request discovery. Prince also did not file a Motion for Sanctions against Pelton for having sent Coburn an email suggesting he had violated federal criminal law, a motion that would have been filed if Prince intended to continue the litigation. This veiled threat to a witness caused Prince to find separate counsel for Coburn, resulting in yet additional expense. Pelton also increased Prince's costs for this litigation by avoiding service for almost a week.

## ARGUMENT

**A.  Because Pelton is responsible for incurring litigation costs, the Complaint should be dismissed without prejudice, thereby denying Pelton a basis for requesting legal fees.**

Pelton's meager legal support for his opposition to dismissal without prejudice does not advance his argument. In *Andes v. Versant Corp.*, 788 F.2d 1033 (4th Cir. 1986), the Fourth Circuit *vacated* (did not "uphold") the district court's order of dismissal with prejudice. The Court concluded "that the district court should have afforded plaintiff the opportunity to exercise options that should have been available to it, and further that the district court's failure to

6

articulate the reasons for its decision deprives us of the opportunity adequate to review its ruling." *Andes* at 1037.

Moreover, all the expenses incurred by Pelton are the result of his own conduct because he has steadfastly refused to sign a Permanent Injunction. Pelton did not even have to Answer the Complaint, only sign a Permanent Injunction.

Pelton's other case, *Riviera Distribs. v. Jones*, 517 F.3d 926 (7th Cir. 2008) is not a "factually similar copyright infringement case." Def. Opp'n 9. Indeed, it is remarkably different. Plaintiff Riviera filed for dismissal after more than one year, conceding it "lacked the evidence to prove its claim," and "hoping to acquire better evidence in the future." *Riviera*, 517 F.3d at 927. But another factor was at issue when it came to defendant's recovering fees under 17 U.S.C. § 505: Chief Judge Easterbrook found that Riviera should pay defendant's legal fees because the suit was filed "in the teeth of an agreement not to sue." *Id.* at 929. The parties had agreed to take any dispute to "an independent expert." *Id.* No such contractual agreement is present here.

Pelton's analysis of the four factors for this Court to decide whether to dismiss with or without prejudice is flawed. The factors are (1) "the opposing party's effort and expense in preparing for trial"; (2) "excessive delay and lack of diligence on the part of the movant"; (3) "insufficient explanation of the need for a voluntary dismissal"; and (4) "the present stage of litigation." Def. Opp'n at 9, citing *Miller v. Terramite Corp.*, 114 Fed. Appx. 536, 539 (4th Cir. 2004). Prince addresses each as follows:

### 1. The opposing party's effort and expense in preparing for trial

Pelton decries his "considerable effort and expense" defending against Prince's "false claims." He cites the deposition of Prince and "organiz[ing] documents." Notably, Pelton, not

7

Prince, accelerated the litigation costs by noticing Prince's deposition early in the litigation and by requesting discovery notwithstanding Prince's stated desire to dismiss the case.

### 2. Excessive delay and lack of diligence on the part of the movant

Pelton cites Prince's failure to serve discovery requests as an example of "lack of diligence," an absurd contention. Prince does not want to pursue this litigation beyond November 18, 2013. It would have been vexatious and inconsistent with Prince's ethical obligations to make discovery demands of Pelton.

### 3. Insufficient explanation of the need for a voluntary dismissal

Pelton asserts— without support— that this factor "clearly weighs in favor of Pelton," Def. Opp'n at 12, summarizing Prince's stated reason as "he [Prince] will not have an incentive to pursue his claims against Pelton" after the book is published. *Id.* Pelton then speculates about fanciful and irrelevant alternative reasons why Prince seeks dismissal but never explains the insufficiency of the stated reason. That there is a Preliminary Injunction in place, and that the publisher will assume responsibility for copyright infringement prosecution on November 18, 2013 are entirely sufficient bases for dismissal. Through the TRO and the stipulated Preliminary Injunction, Prince preserved the value of the work until Portfolio Penguin could bring *Civilian Warriors* to market. Had Prince not pursued this action and Pelton published, the work would have been worthless. Prince's claims with respect to Pelton's past infringement— although meritorious— are unlikely to result in meaningful damages upon publication. Thus, there is no basis to continue the litigation past the publication date.

### 4. The present stage of litigation

The litigation has advanced solely because of Pelton. Unlike *Andes* (cited by Pelton), where summary judgment motions had been filed and fully briefed by both sides, and a decision

8

by the court on summary judgment was "imminent," 788 F.2d at 1037 n. 4, in this case only two depositions have occurred and only Pelton has requested documents and admissions, and propounded interrogatories.  (Even in *Andes*, the Fourth Circuit did not "uphold" [the] trial court's dismissal of the case with prejudice, but rather *vacated* the order of dismissal with prejudice for further proceedings.)

Pelton argues that the Loudoun County suit will not resolve the copyright infringement claims Prince has made against him.  However, Pelton has filed no compulsory counterclaim in this case— under any theory— asserting his status as a joint author or claiming entitlement to the proceeds of the sale of *Civilian Warriors*.  Pelton argues he "no longer wishes to be associated with Prince." Def. Opp'n at 12.  Thus, the only benefit Pelton could achieve from continuing the copyright litigation is to seek attorneys' fees under 17 U.S.C. § 505.[3]

Pelton asserts that the Loudon County breach of contract action will "not afford [him] with the opportunity to recover the costs and fees that he incurred in defending this case." Def. Opp'n at 14.  Because of his conduct here, Pelton should not be entitled to that recovery in any event.  Moreover, such statement contradicts Pelton's repeated assertions that *Civilian Warriors* is covered under the contract at issue in Loudoun County— a contract that provides for attorneys' fees in the event of breach.  *See*, e.g., Def. Ans. at ¶ 7 ("Defendant admits that he solicited, through an agent, an offer from a publisher to sell Autobiography, but states that *Defendant was authorized to do so under the parties' contract* . . . ." (Emphasis added).

---

[3] Pelton argues that somehow Pelton's lack of financial resources should be a factor in this Court's decision.  Def. Opp'n at 11.  Prince is aware of no case law that provides a party fees based on his or her net worth.  If Pelton has to take a loan for lawyer's fees, why is he pursuing further litigation in Loudoun County?  Moreover, why did he not allow this case to cease in July 2013?  He would have saved the "considerable effort and expense" by his law firm. Def. Opp'n at 11.

9

### B. The Court should dismiss the case without prejudice as Prince was the "prevailing party."

In his Motion to Dismiss, Prince provided the Court ample bases to rule the dismissal should be without prejudice. Pl. Memo. in Support at 7-8. Pelton's argument that he should be the prevailing party, because Prince is "throw[ing] in the towel" without sufficient reason for doing so—Def. Opp'n at 11-12—has no basis in fact or law. The Court granted Prince a TRO, and Pelton (with full knowledge of the facts he asserts in his opposition and after retaining counsel) voluntarily agreed to a Preliminary Injunction. The TRO and the Preliminary Injunction each caused a "material alteration of the legal relationship of the parties," which made Prince the "prevailing party." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (U.S. 2001).[4]

Only after Prince was informed by Portfolio Penguin that the actual publication date was scheduled for November 18, and that on that date Portfolio Penguin would assume the litigation responsibility for any future copyright infringement did Prince decide it was legally safe to file the Motion to Dismiss Without Prejudice, Effective November 18, 2013. However, Portfolio Penguin's assumption of legal responsibility would not exclude Prince from having a claim against Pelton if he published the manuscript he has in his possession.

### CONCLUSION

Prince never wanted to litigate this case. Pelton's repeated threats to release the unpublished and unvetted manuscript compelled Prince to undertake expensive and burdensome

---

[4] The only reason Prince cannot recover legal fees as the "prevailing party" under the Copyright Act is because at the time Pelton copied the manuscript for marketing (March 2013), the work was still being vetted by the PRB and could not be registered. 17 U.S.C. § 412(1) ("In any action under this title . . . no award of statutory damages or of attorney's fees . . . shall be made for any infringement of copyright in an unpublished work commenced before the effective date of its registration.")

litigation to protect the value of *Civilian Warriors* in the months prior to its publication date. That goal has been achieved. The Court should not grant Pelton's demand that he be put in a legal position to be paid a ransom for ending the litigation he made necessary by his own reckless threats.

Respectfully submitted,

ERIK D. PRINCE

By:         /s/
Aaron S. Book (VSB No. 43868)
WEBSTER BOOK LLP
300 N. Washington St., Suite 404
Alexandria, Virginia 22314
888-987-9991 Phone & Fax
*abook@websterbook.com*

Victoria Toensing (admitted *pro hac vice*)
Joseph E. diGenova (admitted *pro hac vice*)
diGENOVA & TOENSING, LLP
1776 K. Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)
*vt@digenovatoensing.com*
*jd@digenovatoensing.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Sean F. Murphy (VSB No. 28415)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22012
Telephone No. (703) 712-5487
Facsimile No. (703) 712-5243
*sfmurphy@mcguirewoods.com*

Brian C. Riopelle (VSB No. 36454)
Derek H. Swanson (VSB No. 73463)
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Telephone No. (804) 775-1000
Facsimile No. (804) 775-1061
*briopelle@mcguirewoods.com*
*dswanson@mcguirewoods.com*

*Counsel for Defendant Robert Young Pelton*

/s/
Aaron S. Book (VSB No. 43868)
WEBSTER BOOK LLP
300 N. Washington St., Suite 404
Alexandria, Virginia 22314
888-987-9991 Phone & Fax
*abook@websterbook.com*