1

                  UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      ALEXANDRIA DIVISION

ERIK D. PRINCE,              .    Civil Action No. 1:13cv864
                             .
              Plaintiff,     .
                             .
      vs.                    .    Alexandria, Virginia
                             .    November 15, 2013
ROBERT YOUNG PELTON,         .    10:00 a.m.
                             .
              Defendant.     .
                             .
 .  .  .  .  .  .  .  .  .  .  .


                  TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE LEONIE M. BRINKEMA
                UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFF:           VICTORIA TOENSING, ESQ.
                             diGenova & Toensing, LLP
                             1776 K Street, N.W., Suite 737
                             Washington, D.C. 20006
                               and
                             JAMES J. HOLT, ESQ.
                             Webster Book LLP
                             300 North Washington Street
                             Suite 404
                             Alexandria, VA 22314


FOR THE DEFENDANT:           DEREK H. SWANSON, ESQ.
                             McGuire Woods LLP
                             901 East Cary Street
                             Richmond, VA 23219


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Fifth Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595


                    (Pages 1 - 12)

          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

                        P R O C E E D I N G S

1              THE CLERK:  Civil Action 13-864, Erik D. Prince v.

2      Robert Young Pelton.  Would counsel please note their

3      appearances for the record.

4              MR. HOLT:  Good morning, Your Honor.  James Holt,

5      local counsel for the plaintiff.

6              MS. TOENSING:  Victoria Toensing, counsel for Erik

7      Prince, plaintiff.

8              THE COURT:  Good morning.

9              And for the defense?

10             MR. SWANSON:  Good morning, Your Honor.  Derek

11     Swanson from McGuire Woods for Robert Pelton.

12             THE COURT:  All right.  Well, this matter is before

13     the Court, it's actually relatively unusual to have to have a

14     hearing on a motion to dismiss that's been filed by the

15     plaintiff.  What we have here is the plaintiff wants to

16     voluntarily dismiss without prejudice this lawsuit, and that

17     would be effective as of Monday, and the defense has not

18     opposed the dismissal but wants it with prejudice, and it's

19     been briefed.  Does either side have anything they want to add

20     to their briefs?

21             Ms. Toensing?

22             MS. TOENSING:  Yes, Your Honor.  Is this close

23     enough?

24             THE COURT:  Yes, ma'am.

1        MS. TOENSING:  Can you hear me?

2        But for Robert Young Pelton's specific and documented

3   threats to make Mr. Prince's manuscript public, we would not be

4   here.  And Mr. Pelton made those threats not once, not twice,

5   but three times, on three consecutive days, in three different

6   fora.  And it's not the usual case where it's a he said/he

7   said.  These were documented; and in fact, the documentation

8   was before this Court when you granted Mr. Prince's motion for

9   a TRO.

10        Moreover, the manuscript that Mr. Pelton had in his

11   possession had material that the CIA's PRB claimed was

12   classified; and at that time in mid-July, Portfolio Penguin was

13   refusing to sign a contract reflecting its oral agreement, its

14   June oral agreement with Mr. Prince to purchase the manuscript,

15   claiming that if Mr. Pelton made good on those threats to

16   publish -- I'm going to quote from the declaration from the

17   publisher right now -- it would "substantially compromise, if

18   not completely destroy, the value of Mr. Prince's manuscript."

19   Mr. Prince would have been considered irresponsible if he had

20   not asked this Court for a TRO.  Bringing this case was a

21   necessity.

22        Contrary to Mr. Pelton's claim, material facts have

23   not changed in discovery.  Mr. Pelton's threats to publish the

24   manuscript remain documented.  Mr. Pelton retains possession of

25   that manuscript, which still contains information that the CIA

4

1    says is classified.

2           Mr. Pelton did not write the book.  He provided only

3    minimal cosmetic assistance on this manuscript; and you have

4    the declaration of Davin Coburn, the real editor with

5    Mr. Prince, a total of 13 edits in four chapters out of 17, and

6    one of those chapters has been completely dropped from the

7    book; and Mr. Pelton, who now claims he has no intention of

8    publishing the manuscript, still refuses to sign a permanent

9    injunction unless he is paid money.

10          The material fact that has changed is that the

11   publisher, Portfolio Penguin, as of the date of publication,

12   which as Your Honor just noted is Monday, November 18, is

13   assuming responsibility for any copyright infringement.  Thus,

14   Mr. Prince's reason for bringing the suit, which was to protect

15   the manuscript until publication, has been met.

16          When Portfolio Penguin provided us the specific date

17   of publication, Mr. Prince filed this motion to dismiss the

18   case without prejudice; and in that motion, we address the four

19   factors that this Court has to consider in deciding whether to

20   grant the motion.  No. 1 --

21          THE COURT:  I don't need -- I don't need to hear them

22   repeated.  I know them.  Thank you.

23          MS. TOENSING:  Thank you, Your Honor.

24          I will, I will proceed then because I would like to

25   address --

1          THE COURT:  Well, no, let me ask you a question:  I

2     understand there is still state court litigation between the

3     parties.

4          MS. TOENSING:  There is.

5          THE COURT:  Is this book at all an issue in that

6     litigation?

7          MS. TOENSING:  We would say it is not, but Mr. Pelton

8     claimed in his brief -- in his response and his answer to our

9     complaint that it is the subject of the contract.  I don't know

10    how far the Court wants to go in that.  We claim that there was

11    an exception in the contract of the autobiography of

12    Mr. Prince.

13         THE COURT:  Well, all right.  All right.  So you

14    think it's still there and --

15         MS. TOENSING:  No, we do not.

16         THE COURT:  All right.  You think that he thinks it's

17    still there, yes.

18         MS. TOENSING:  Yes.

19         THE COURT:  How much is at issue in that litigation,

20    do you know?

21         MS. TOENSING:  Yes.  There is a contract --

22         THE COURT:  Right.

23         MS. TOENSING:  -- in that litigation between DPx,

24    Mr. Pelton's company, and Mr. Prince's company and Mr. Prince;

25    and at issue is the money -- each claims the other owes money

1   under that contract.

2           THE COURT:  So there are cross-claims or

3   counterclaims in that lawsuit?

4           MS. TOENSING:  There will be, yes.

5           THE COURT:  There will be.  And as I understand it,

6   since it's a breach of contract action, there is an attorney

7   fee recovery provision in that contract.

8           MS. TOENSING:  That would be correct, Your Honor.

9           THE COURT:  So that litigation could get quite

10  expensive in terms of transaction costs.

11          MS. TOENSING:  It could.

12          THE COURT:  All right, all right.

13          All right, let me hear from the defense on this,

14  because I will tell you, Mr. Swanson, I think the plaintiff's

15  argument is well taken that your client could have ended this

16  whole thing by simply agreeing to a permanent injunction; and

17  you're going to need to explain to me first and foremost why

18  that was not done.

19          He agreed to the temporary restraining order; and

20  given the facts of this case, why not have -- why not agree to

21  the permanent injunction; and that would have really ended this

22  litigation much sooner?

23          MR. SWANSON:  Gladly.  Your Honor.  The -- well,

24  first of all, with respect to the threats to publish, the --

25          THE COURT:  No, no, you're not -- answer my question:

1    Why did, why did your client not agree to promptly sign a

2    permanent injunction?

3              MR. SWANSON:  Your Honor, I would like to address

4    your question very directly.

5              THE COURT:  Then you should.

6              MR. SWANSON:  What I want to start with --

7              THE COURT:  No, you should address -- always address

8    the judge's question first.  Then if you've given a decent

9    answer, you might get a chance to expand upon it.  Go ahead.

10   What's the answer?

11             MR. SWANSON:  Well, the answer, Your Honor, is that

12   by stipulating to a permanent injunction, Mr. Pelton would be

13   extinguishing his potential rights under the Copyright Act as a

14   joint legal author of the work.

15             THE COURT:  How can you argue that somebody is a

16   joint author if all he has done -- and maybe I misunderstand

17   the facts -- if all he has done is some minor editing and

18   putting the author in touch with what's sometimes called a

19   ghost writer or a professional writer or editor who can really

20   clean it up?  What other evidence do you have that your client

21   essentially was a cowriter of this book?

22             MR. SWANSON:  Well, Your Honor, the, the evidence

23   supporting those facts is laid out in the briefs in the

24   declaration of Davin Coburn.  There was hours and hours and

25   hours of lengthy and detailed conversations between my client

1    and Mr. Coburn.

2          Mr. Pelton worked substantively through telephone

3    conversations and e-mails on the tone and accessibility of the

4    book.  He rearranged paragraphs.  He made specific textual

5    additions.

6          And under the copyright law for joint authorship,

7    what is required is that your contribution is itself

8    copyrightable.  So Mr. Pelton's contribution to the book, as

9    original contributions that -- into a tangible medium, with, as

10   we have documented, the intent by all that those additions

11   become part of the work as a whole, give him a good faith

12   affirmative defense in this case to a claim of joint authorship

13   under the copyright law.

14          THE COURT:  Well, then to some extent, aren't you

15   really supporting the plaintiff's argument that this dismissal

16   should be without prejudice?

17          MR. SWANSON:  No, Your Honor, because my client never

18   had an intent to publish.  He still does not have an intent to

19   publish.  The alleged threats that he made were that he was

20   going to have to file the, the book as evidence; and then he

21   also was joking around one day on his own private Facebook

22   page, you know, "Does anybody want to buy a copy of the book?"

23          He was never going to distribute the book, and there

24   is no chance that he's going to do that in the future.

25          And with Mr. Prince, his saying that he doesn't have

1   any sufficient interest to proceed with this litigation, it

2   means that the likelihood of litigation between these parties

3   going forward is not likely.

4          Now, Your Honor, the reason why this litigation

5   didn't end in a day is -- and I would -- I will concede to you

6   that I think that, that, you know, with the grounds that were

7   alleged for a TRO, that it was not improper for the TRO to be

8   entered.  The reason why this litigation has progressed is that

9   the facts that were given in support of the complaint and the

10  TRO motion were so misstated that it put my client in the

11  position where -- and also included allegations of, of past

12  copyright infringement.

13         I mean, the story was that he had stolen this book,

14  he had nothing to do with it, he didn't write any of it; and my

15  client has been involved in this litigation to date to be able

16  to have discovery that would vindicate his public reputation as

17  an author.

18         THE COURT:  Does your client have a current security

19  clearance?

20         MR. SWANSON:  No, Your Honor.

21         THE COURT:  Are you not concerned about the

22  allegations that he has in his possession a document with

23  classified information in it?

24         MR. SWANSON:  Well, Your Honor, I can assure you that

25  members of my law firm who deal specifically with that

1   information have given Mr. Pelton specific advice about that.

2   He has, he has removed -- we weren't -- we were hesitant for it

3   to be destroyed in its entirety because it would put us at a

4   potential evidentiary disadvantage in this particular case.

5   However, he has moved that document from any publicly, you

6   know, any computer that connects to the Internet and has

7   secured it, you know, in a tangible, portable storage device

8   that he keeps under lock and key.

9           THE COURT:  What's the level of clearance involved

10  here, do you know?  Is it Secret, Top Secret, SCI,

11  Ms. Toensing?  Do you have a sense of what --

12          MS. TOENSING:  Your Honor, in working with the PRB in

13  getting this book published, it was iffy between Secret and Top

14  Secret.  They were never real clear with me.  It was not SCI to

15  my knowledge.

16          THE COURT:  But if it's Top Secret, the level of

17  protection is different than the level of protection for

18  Secret.  I mean -- and therefore, your people should be really

19  looking at that carefully.  Given the environment these days,

20  the improper handling of classified information is a, it's a

21  federal crime.

22          In any case, look, I've looked at the papers in this

23  case.  I'm satisfied that the plaintiff's motion makes good

24  sense.  Your client by not signing the permanent injunction and

25  just the conversation we've had this morning suggests that

1   there is still the possibility of some problem arising; and to

2   allow this dismissal to be with prejudice would foreclose the

3   ability of Mr. Prince down the road, if he had to bring this

4   action again in some form, we still don't know what will happen

5   with the publisher if there are problems.

6          I do think that the defendant could have ended this

7   litigation much sooner.  I also note that there really has not

8   been that much discovery done in this case, so the degree of

9   prejudice to the defendant is in my view minimal, and I agree

10  with the plaintiff, it's to a significant degree self-imposed.

11  So for those reasons, I'm going to grant the plaintiff's

12  motion.

13         I will not enter the order until Monday rather than

14  doing it preliminarily; but the motion is granted; and on

15  Monday, I will dismiss this case without prejudice.

16         MR. SWANSON:  Your Honor, just as a procedural note,

17  we filed late last evening a motion to strike a deposition

18  errata sheet of Mr. Prince.  I guess my concern would be that

19  if the case is dismissed, then that would become a matter of

20  the evidentiary record in this case and --

21         THE COURT:  It is what it is.  Any piece of evidence

22  that's been developed in this case potentially is available in

23  further litigation.

24         MR. SWANSON:  Correct, Your Honor.  I guess the, the

25  grounds of the motion to strike were that the errata made

1  substantive changes to his deposition testimony, which has been

2  ruled in this district multiple times to be improper under Rule

3  30(e).

4          THE COURT:  Well, actually, I'm sorry, that was filed

5  late last night; and I didn't get a response from the other

6  side on that; and I'm not really going to worry about that.

7          The case at this point has been dismissed without

8  prejudice.  That ends it.  And hopefully, you-all can sit down

9  and try to work out the remaining litigation, because again,

10  now the attorneys' fees are going to start counting.  Whoever

11  loses that case is going to get hit with potentially a

12  significant amount of transaction costs, not only his own costs

13  for litigating the case but potentially the costs of the other

14  side for winning the case.

15          MR. SWANSON:  Yes, Your Honor.

16          THE COURT:  That's my ruling.  Thank you.

17          MS. TOENSING:  Thank you, Your Honor.

18                          (Which were all the proceedings

19                           had at this time.)

20

21              CERTIFICATE OF THE REPORTER

22      I certify that the foregoing is a correct transcript of

23  the record of proceedings in the above-entitled matter.

24

25                              /s/
                        Anneliese J. Thomson